UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
MINERVA SOBA, as guardian ad litem for
her daughter, Stephanie Carballal,

                  Plaintiff,

         - against -

NEW YORK CITY HOUSING AUTHORITY and
BENJAMIN VALENTIN,

                Defendants.
-----------------------------------------X

**MEMORANDUM AND ORDER**

11 Civ. 7430 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Minerva Soba ("plaintiff"), as guardian ad litem for her intellectually disabled daughter, Stephanie Carballal ("Carballal"), commenced this action against the New York City Housing Authority ("NYCHA") and its former exterminator, Benjamin Valentin ("Valentin"), alleging that Valentin sexually assaulted Carballal in violation of federal and state law. Valentin has not answered plaintiff's complaint or otherwise appeared in this action.[1]

    Nonetheless, plaintiff maintains that NYCHA is liable for Valentin's alleged misconduct pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978), and a state law theory of vicarious liability. In addition, plaintiff asserts a

_____

[1]     The Clerk of Court entered a certificate of default against Valentin on June 7, 2013. See Clerk's Certificate, June 7, 2013, Dkt. No. 22.

direct claim against NYCHA for negligent hiring, retention, training, and/or supervision of Valentin.

In the motion before the Court, NYCHA seeks dismissal of plaintiff's claims pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"). For the reasons set forth below, we grant NYCHA's motion. We wish to make clear, however, that this Memorandum and Order is addressed solely to the issue of whether NYCHA may be held liable for the conduct alleged.

**BACKGROUND**[2]

## I.   Introduction

Carballal is an intellectually challenged adult who lives with her siblings and mother (i.e., plaintiff) in an apartment

---

[2]   In analyzing the instant motion, we have disregarded numerous citations and averments in the parties' Rule 56.1 statements. In many instances, NYCHA cites inadmissible hearsay evidence (e.g., the prior testimony of nonparty witnesses) to support the existence of an allegedly undisputed fact. Plaintiff, in turn, endeavors to dispute NYCHA's factual assertions on the basis of evidentiary objections alone. However, plaintiff frequently does not cite any controverting evidence, as required by Local Rule 56.1(d), to demonstrate the existence of a genuine factual dispute. In accordance with Local Rule 56.1(b), plaintiff also provides a statement of additional facts that allegedly present genuine issues to be tried. However, many of these facts consist of entirely formulaic data (e.g., Carballal's age) that the parties cannot seriously dispute.

Given these shortcomings in the parties' Rule 56.1 statements, we have undertaken "an assiduous review of the record" to determine whether material facts are genuinely in dispute. Spiegel v. Schulmann, 604 F.3d 72, 83 (2d Cir. 2010) (internal quotation marks omitted). Accordingly, this background is derived from (1) the Amended Complaint ("Compl."), filed January 11, 2012; (2) the Declaration of Joanne Filiberti in Support of Defendant's Motion for Summary Judgment ("Filiberti Decl."), filed September 14, 2012, and the exhibits annexed thereto; (3) the Declaration of Stuart Jacobs in Opposition to Defendant's Motion for Summary Judgment ("Jacobs Decl."), filed November 6, 2012, and the exhibits annexed thereto; and (4) the Supplemental Declaration of Joanne Filiberti in Further Support of Defendant's Motion for Summary Judgment ("Supp. Filiberti Decl."), filed May 31, 2013, and the exhibit annexed thereto. When citing to specific pages of the exhibits annexed to the Filiberti Declarations, we refer to the page numbers provided in the ECF header.

building owned and operated by NYCHA. Compl. ¶¶ 12-14. Valentin is a former exterminator in NYCHA's Manhattan Property Management Department (the "Department"). See Filiberti Decl. Ex. A, at 1. Prior to the alleged incident underlying this action, Valentin worked as a NYCHA exterminator for approximately 23 years. See id. Ex. O, pt. 1, at 27 (identifying "7/27/1987" as Valentin's date of appointment).

On September 14, 2010, Carballal was allegedly alone in the apartment, wearing a black nightgown, when Valentin knocked on the door and told Carballal that he needed to perform extermination work. Compl. ¶¶ 16-18; Filiberti Decl. Ex. B, at 90:12-13, 111:10-11. Upon entering the apartment, Valentin allegedly groped Carballal's breasts and subjected her to other nonconsensual sex acts. Compl. ¶¶ 19-28. Plaintiff reported the incident to the police, who arrested Valentin later that day. Id. ¶ 32. The New York County District Attorney's Office declined to prosecute Valentin. See Filiberti Decl. Ex. B, at 54:16-23. However, NYCHA launched a formal disciplinary action against Valentin, resulting in his ultimate resignation. See generally id. Exs. B-C, E.

Plaintiff now seeks to hold NYCHA liable for Valentin's alleged misconduct on a theory of municipal liability under 42 U.S.C. § 1983 ("section 1983"). See Compl. ¶¶ 75-82. Specifically, plaintiff maintains that Carballal's alleged

injuries were the result of NYCHA's official policy, practice, or custom, see id. ¶ 77, including its failure to properly recruit, screen, train, discipline, and/or supervise its employees, see id. ¶ 78. Plaintiff also seeks to hold NYCHA liable under a state law theory of respondeat superior. Id. ¶¶ 48, 53, 63, 68. To do so, plaintiff contends, inter alia, that Valentin committed the alleged sexual assault within the scope of his employment. Id. ¶¶ 47, 52. Finally, plaintiff alleges that NYCHA is independently liable to Carballa for negligently hiring, retaining, training, and/or supervising Valentin. Id. ¶¶ 55-57. Accordingly, plaintiff maintains that NYCHA had actual or constructive knowledge of Valentin's propensity to commit the acts alleged here.

## II.  NYCHA's Relevant Rules and Regulations

NYCHA provides its employees with a booklet entitled "General Regulations of Behavior" (the "regulations booklet"), see Filiberti Decl. Ex. S, which Valentin received on May 10, 2005, see id. Ex. T. The regulations booklet provides a compilation of rules, presented in "simple and clear language," that derives from "the Human Resources Manual, the Management Manual, standard procedures, and memos that have been issued to employees." Id. Ex. S, at 3. The intended purpose of the regulations booklet is to assist NYCHA employees in

4

"prevent[ing] any mistakes, errors in judgment or appearances of impropriety both on and off the job." Id.

The regulations booklet provides a number of rules that apply to employees, like Valentin, who "perform work in apartments." Id. Ex. S, at 9. As relevant here, the regulations booklet prohibits such employees from (1) visiting an apartment "during working hours except in the performance of assigned duties," (2) entering an apartment "if the occupants are not properly clothed," (3) engaging in "inappropriate conversation or discussion with the resident or others in the apartment," and (4) getting "too close to" or "touch[ing] any occupant in the apartment for any reason." Id. Ex. S, at 10-11; see also id. Ex. A, at 1-2 (identifying similar rules in NYCHA's Human Resources Manual).

## III. **NYCHA's Previous Charges Against Valentin**

Apart from the incident alleged here, NYCHA levied disciplinary charges against Valentin on three prior occasions. See Jacobs Decl. Exs. 4-6. On April 6, 1995, NYCHA charged Valentin with (1) disobeying a superior's orders to stop using an office copy machine for personal use, (2) relying on other employees to perform personal tasks, and (3) maintaining unsatisfactory time and attendance. Id. Ex. 6. A trial officer found Valentin guilty of these charges. Id. Accordingly, the trial officer recommended that the Members of

5

the NYCHA Board (the "Board") suspend Valentin for five work days.  Id.

Approximately three years later, on April 27, 1998, NYCHA charged Valentin with (1) maintaining poor time and attendance, (2) being absent without leave, (3) failing to report to supervisors as directed, (4) failing to submit a punch card in a timely manner, and (5) failing to submit a monthly report. Id. Ex. 5.  Once again, a trial officer found Valentin guilty as charged.  Id.  Accordingly, the trial officer recommended that the Board suspend Valentin for seven work days.  Id.

Finally, approximately 11 years later, on January 8, 2009, NYCHA charged Valentin with the following alleged misconduct: (1) operating, borrowing, removing, or using a NYCHA vehicle without proper authorization; (2) engaging in dishonest conduct by submitting a false "Weekly Automobile Record"; (3)(a) failing to use reasonable care in the operation, use, and maintenance of a NYCHA vehicle; (3)(b) leaving a work site without authorization; (4) disobeying a superior's order to schedule pest management at the Rangel Houses; (5) failing, neglecting, or refusing to complete assigned tasks at the Rangel Houses; (6)(a) failing, neglecting, or refusing to complete assigned tasks at the Douglass Houses; (6)(b) leaving the Douglass Houses without authorization; (7)(a) using abusive, profane, or offensive language or gestures directed at

6

a superior; and 7(b) engaging in dishonest conduct by making a false statement to a superior. Id. Ex. 4. After a disciplinary hearing, a trial officer found Valentin guilty of charges 1, 4, 5, 6, and 7(a),[3] id., and recommended that the Board suspend Valentin for 15 work days, id.

In its review of the trial officer's recommendation, the Board rejected the suggested suspension and found it appropriate to demote Valentin instead. Id.; see also Filiberti Decl. Ex. O, pt. 2, at 10, 17-18. The Board wrote:

> In all, [Valentin] was found guilty of various kinds of misconduct on eight different dates over sixteen months. By no means were these instances of misconduct the only ones in [Valentin's] tenure. Prior to the incidents covered by these charges, [Valentin] received 15 counseling memoranda.[4] Although [Valentin] managed to avoid counseling memoranda between 2001 and 2007, he received four Invalid Driver's License Notifications during that period, a serious matter for an employee whose position requires regular driving.

Jacobs Decl. Ex. 4. As a result of the Board's decision, NYCHA demoted Valentin from the position of "Supervisor of Housing Exterminators" to "Housing Terminator" in April 2010. See Filiberti Decl. Ex. O, pt. 2, at 10, 17-18. Approximately five months later, Valentin allegedly sexually assaulted Carballal.

---

[3] NYCHA withdrew charge 3 at the conclusion of its case. Jacobs Decl. Ex. 4.
[4] A counseling memorandum documents an incident of misconduct. See Supp. Filiberti Decl. Ex. U, at 19:15-20:3.

**IV.  <u>The Disciplinary Action Against Valentin</u>**

The day after the alleged sexual assault, Joseph Roeder, the Deputy Director of the Department, sent an internal memorandum to Robert Knapp, the Director of the Department, requesting the "immediate suspension" of Valentin.  <u>Id.</u> Ex. O, pt. 2, at 13.  In his memorandum, Roeder wrote:

> [The requested suspension] is due to [Valentin's] arrest on 9/14/10 at Fulton Houses, during working hours, stemming from a resident's allegations that Mr. Valentin fondled her daughter while in her apartment.  Due to the seriousness and sensitivity of this allegation, Mr. Valentin's immediate suspension is necessary to avoid placing our residents and staff in danger.

<u>Id.</u>  Knapp escalated Roeder's request to Dawn Pinnock, the Director of Human Resources, <u>id.</u> Ex. O, pt. 2, at 14, who suspended Valentin later that day, <u>id.</u> Ex. O, pt. 2, at 16.

Approximately two months later, NYCHA commenced formal disciplinary proceedings against Valentin.  <u>See</u> <u>id.</u> Ex. A.  In a letter dated November 23, 2010, Pinnock alleged that Valentin violated several provisions of NYCHA's Human Resources Manual by, <u>inter alia</u>:

- "visit[ing] a resident's apartment during working hours while not in the performance of assigned duties and/or without authorization or permission from [a] supervisor";

- "ma[king] unwanted sexual advances, subtle or overt pressure for sexual favors, and/or unwanted flirtations, innuendos, advances or propositions directed towards a resident";

- "touch[ing] the sexual or other intimate parts of another person for the purpose of degrading or abusing such person; or for the purpose of gratifying [his] sexual desire";

- "subject[ing] another person to sexual contact without the latter's consent";

- "subject[ing] a resident to sexual contact by forcible compulsion"; and

- acting "in a manner that was prejudicial to or discredited [NYCHA] by engaging in sexual conduct and/or sexual misconduct during the workday."

Id. Ex. A, at 1-2. A trial officer adjudicated these charges over the course of two non-consecutive days in December 2010 and March 2011. Id. Exs. B-C. On or around June 14, 2011, Valentin resigned from his position. Id. Ex. E, at 2. Approximately one week later, Pinnock notified Valentin that the trial officer had found Valentin guilty of all charges, thus warranting his dismissal. Id. Ex. D.

**DISCUSSION**

**I.   Summary Judgment Standard**

A motion for summary judgment is appropriately granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In this context, "[a] fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 558 (2d Cir. 2012) (internal quotation marks omitted).  When making this determination, "the Court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment" is sought. Winfield v. Trottier, 710 F.3d 49, 52 (2d Cir. 2013) (internal quotation marks omitted).

On a motion for summary judgment, "[t]he moving party bears the initial burden of demonstrating 'the absence of a genuine issue of material fact.'" Fed. Deposit Ins. Co. v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  Where that burden is carried, the nonmoving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal quotation marks and citations omitted).

II.  **Analysis**

As noted supra, plaintiff maintains that NYCHA is liable for Valentin's alleged misconduct pursuant to Monell and a

state law theory of <u>respondeat superior</u>. In addition, plaintiff alleges that NYCHA is independently liable to Carballal for negligently hiring, retaining, training, and/or supervising Valentin. We address these claims in turn.

### A. NYCHA Is Not Liable Under Section 1983 for Valentin's Alleged Misconduct

A municipality cannot be held liable under section 1983 "on a <u>respondeat superior</u> basis for the tort of its employee." <u>Jones v. Town of East Haven</u>, 691 F.3d 72, 80 (2d Cir. 2012) (citing <u>Monell</u>, 436 U.S. at 691); <u>see also</u> <u>Los Angeles County v. Humphries</u>, -- U.S. --, 131 S.Ct. 447, 452 (2010) (stating that a municipality will not be held liable under section 1983 "<u>solely</u> because it employs a tortfeasor" (internal quotation marks omitted)). Rather, a municipality is liable under section 1983 only where "'the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.'" <u>Cash v. County of Erie</u>, 654 F.3d 324, 333 (2d Cir. 2011) (quoting <u>Connick v. Thompson</u>, -- U.S. --, 131 S.Ct. 1350, 1359 (2011)).

To prevail on a claim of municipal liability, a plaintiff must satisfy a two-prong test. <u>Johnson v. City of New York</u>, No. 06 Civ. 9426 (GBD), 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011). First, the plaintiff "must 'prove the existence'" of a governmental custom, policy, or usage, demonstrating that

the municipality took "'some action'" beyond merely employing the alleged tortfeasor.  Id. (quoting Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985)); see also Jones, 691 F.3d at 80.  Second, the "plaintiff must 'establish a causal connection'" between the custom, policy, or usage and the alleged deprivation of the plaintiff's constitutional rights.  Johnson, 2011 WL 666161, at *3 (quoting Vippolis, 768 F.2d at 44); see also Cash, 654 F.3d at 333 (stating that "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury" (internal quotation marks omitted)).

A plaintiff may satisfy the "custom, policy, or usage" requirement in one of four ways.  See Robinson v. Town of Kent, 835 F. Supp. 2d 1, 8 (S.D.N.Y. 2011).  The plaintiff may offer evidence of (1) "a formal policy which is officially endorsed by the municipality," (2) "actions taken or decisions made by municipal officials with final decision-making authority," (3) "a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of policymaking officials," or (4) "a failure by policymakers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact with the municipal employees."  Id.

(internal quotation marks omitted); see also Brandon v. City of New York, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (collecting authority).

Where a plaintiff seeks to hold a municipality liable under a theory of deliberate indifference, the "operative inquiry" is whether "the policymaker's inaction was the result of conscious choice and not mere negligence." Cash, 654 F.3d at 334 (internal quotation marks omitted). To establish deliberate indifference, the plaintiff must demonstrate, inter alia, that the policymaker knew "to a moral certainty" that its employee would "confront a given situation." Okin v. Vill. of Cornwall-On-Hudson Police Dep't, 577 F.3d 415, 440 (2d Cir. 2009) (internal quotation marks omitted); see also Amnesty Am. v. Town of West Hartford, 361 F.3d 113, 127 (2d Cir. 2004) (stating that a plaintiff must "show[] that the need for more or better supervision to protect against constitutional violations was obvious" (internal quotation marks omitted)). As the Court of Appeals has cautioned, "'deliberate indifference' is 'a stringent standard of fault.'" Cash, 654 F.3d at 334 (quoting Connick, 131 S.Ct. at 1360).

In this case, we find that plaintiff's Monell claim falls woefully short. Even assuming, arguendo, that Valentin

violated Carballal's constitutional rights,[5] plaintiff has nonetheless failed to raise a triable issue of fact as to any custom, policy, or usage that was causally responsible for the injuries alleged. As an initial matter, it is undisputed that NYCHA's written policies <u>prohibited</u> Valentin's conduct. <u>See</u> Filiberti Decl. Exs. A, S. Under the regulations booklet, Valentin was not permitted to enter plaintiff's apartment, let alone to touch Carballal.[6] <u>See, e.g.</u>, <u>id.</u> Ex. S, at 10 (prohibiting NYCHA employees from, among other things, (1) entering an apartment when an occupant is "not properly clothed" and (2) touching an occupant "for any reason"); <u>see also id.</u> Ex. A (citing similar prohibitions in NYCHA's Human Resources Manual). Under these circumstances, a reasonable jury simply could not conclude that NYCHA's policies or practices were the "moving force" behind the alleged sexual assault. <u>See, e.g.</u>, <u>In re Murphy</u>, 482 Fed. App'x 624, 626 (2d Cir. 2012) (holding that a municipality was not vicariously liable under section 1983 when its "policies and procedures

---

[5]    <u>See Okin</u>, 577 F.3d at 439 ("<u>Monell</u> does not provide a separate cause of action for the failure by the government to train its employees; it <u>extends</u> liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." (internal quotation marks omitted)).

[6]    Nonetheless, plaintiff requests additional discovery to determine "whether an affirmative NYCHA policy exists that caused [Carballal] to be sexually assaulted." Pl.'s Mem. of Law in Opp'n to Def. NYCHA's Mot. for Summ. J. (hereinafter "Pl.'s Br.") 19. In light of the various written policies to the contrary, plaintiff's request borders on the frivolous.

actually prohibit[ed]" the alleged misconduct); <u>Tuminello v. Doe</u>, No. 10 Civ. 1950 (DRH)(ARL), 2013 WL 1845532, at *3 (E.D.N.Y. Apr. 30, 2013) (same).

Nonetheless, plaintiff argues that there is a genuine dispute as to whether "NYCHA was deliberately indifferent by failing to properly discipline and supervise" Valentin. Pl.'s Br. 21. In support of this contention, plaintiff cites Valentin's "extensive disciplinary history" and argues that "Valentin should have been fired long before he had an opportunity [to] sexually assault" Carballal. Letter from Stuart E. Jacobs, Esq., to Court 2 (May 31, 2013) (hereinafter "Jacobs Letter"); <u>see also</u> Pl.'s Br. 20. However, the question is not whether NYCHA should have terminated Valentin for taking a car without authorization, using profanity in front of a supervisor, or showing up late for work. <u>See Cash</u>, 654 F.3d at 334 (emphasizing that "mere negligence" does not give rise to <u>Monell</u> liability (internal quotation marks omitted)); <u>Cf. Sassaman v. Gamache</u>, 566 F.3d 307, 314 (2d Cir. 2009) (stating that "it is not the role of federal courts to review the correctness of employment decisions"). Rather, the question is whether a reasonable jury would find that NYCHA exhibited deliberate indifference to constitutional violations "similar" to those alleged here. <u>Connick</u>, 131 S.Ct. at 1360.

On the record before the Court, the answer is clearly no. Plaintiff has not proffered any evidence demonstrating that NYCHA had actual or constructive knowledge of any proclivity on Valentin's part for sexually assaultive behavior.[7]  To be sure, NYCHA levied formal disciplinary charges against Valentin on three prior occasions, see Jacobs Decl. Exs. 4-6, and issued 15 counseling memoranda during the course of his 23-year career, see id. Ex. 4.  However, the conduct that gave rise to those disciplinary actions was wholly dissimilar to the incident

---

[7]    Moreover, further discovery on this issue would be futile.  In response to plaintiff's discovery demands, NYCHA produced (1) all relevant, non-privileged documents from Valentin's employment file and (2) Valentin's counseling memoranda, which we reviewed in camera.  See Letter from Joanne Filiberti, Esq., to Court 1 (June 18, 2013); see also Letter from Joanne Filiberti, Esq., to Court 1 (June 25, 2013) (confirming that NYCHA has conducted "a complete search of all locations that might contain documents responsive to discovery demands").

Despite the exhaustive nature of these disclosures, plaintiff argues that additional discovery is required.  However, virtually all of the requested discovery goes to the irrelevant question of whether NYCHA should have fired Valentin for misconduct of a wholly dissimilar nature that in no way foreshadowed the acts alleged here.  See, e.g., Jacobs Letter 5 (requesting additional deposition discovery to determine whether NYCHA could have "tracked" Valentin's whereabouts more closely).

In any event, much of the discovery plaintiff seeks could not, as a matter of law, create a genuine dispute as to any material fact.  For instance, plaintiff requests "all records related to . . . unfounded and unsubstantiated allegations" against Valentin, which records were allegedly removed from Valentin's employment file.  Id. 4.  However, because these records, if any, involve only unfounded and unsubstantiated allegations, they are inherently speculative and, thus, inappropriate for our consideration on a motion for summary judgment.  DiStiso v. Cook, 691 F.3d 226, 230 (2d Cir. 2012).

Accordingly, we conclude that the record is complete with respect to the question of NYCHA's Monell liability.  Although we offered plaintiff an opportunity to submit a legal memorandum explaining why further discovery was warranted, plaintiff declined our invitation and focused its memorandum on the remaining state law claims instead.  See Pl.'s Supplemental Mem. of Law in Further Opp'n to Def. NYCHA's Mot. for Summ. J. (hereinafter "Pl.'s Supp. Br.").  As explained infra, additional discovery is not justified with respect to these claims either.  See infra Section II(B)-(C).

alleged here.[8]  See id. Exs. 4-6.  There is no indication that
Valentin ever entered a tenant's apartment under false
pretenses prior to September 14, 2010.  Id.[9]  Nor is there any
evidence that Valentin had inappropriate contact with a tenant
other than Carballal.  Id.

To demonstrate otherwise, plaintiff alleges that Howard
Korman, a NYCHA attorney, told her that the alleged sexual
assault "was not the first time . . . Valentin had done
something like this."  Jacobs Decl. Ex. 2 ¶ 7.  However, when
questioned about the context and content of this conversation
during his deposition, Korman stated that he described Valentin
as a "bad guy" who had "been in trouble before" solely to
encourage plaintiff to testify at Valentin's disciplinary
hearing and to reassure plaintiff that NYCHA would address the
alleged sexual assault.  Supp. Filiberti Decl. Ex. U, at 50:24-
1:3; see also id. Ex. U, at 51:24-52:10 ("That was something
that I said essentially to try and make sure she came down for
the hearing, you know . . . . I wanted to try to let her know
that I was on her side and that, you know, we were going to

---

[8]    By letter dated May 9, 2013, we notified plaintiff's counsel that the
counseling memoranda "contain[ed] absolutely no information that [wa]s
relevant to this action."  Letter from Court to Stuart E. Jacobs, Esq., and
Joanne Filiberti, Esq., 1 (May 9, 2013).
[9]    See also Supp. Filiberti Decl. Ex. U, at 56:5-12 (Q:  "Were there any
instances of discipline noted in Mr. Valentin's record that he had, on
previous occasion, gone to people's apartments to allegedly exterminate at
times not listed on the work order?"  A:  "I'm not aware of such
allegations, such prior allegations.").

bring charges and we were gonna seek to fire this guy."). Contrary to plaintiff's suggestion, Korman did not indicate that Valentin had ever engaged in misconduct of a nature similar to the incident alleged here. See id. Ex. U, at 51:10-13 (Korman testifying that he was referring to Valentin's prior disciplinary hearing (i.e., the hearing involving the use of a NYCHA vehicle without authorization) when he described Valentin as a "bad guy"). The accuracy of Korman's testimony is corroborated by NYCHA's additional searches of all locations that might contain record of Valentin's previous disciplinary charges. See Letter from Joanne Filiberti, Esq., to Court 1 (June 25, 2013). Because those searches did not demonstrate the existence of any relevant misconduct, see id., Korman's conversation with plaintiff does not raise a genuine dispute as to NYCHA's deliberate indifference to constitutional deprivations similar to those alleged here.

    We are left, then, with the isolated occurrence of the alleged sexual assault. As unfortunate as that event may be, a "'single incident'" cannot form the basis of a municipality's liability under section 1983, particularly when the incident was entirely unforeseeable at the time that it occurred. K.D. ex rel. Duncan v. White Plains Sch. Dist., -- F. Supp. 2d --, No. 11 Civ. 6756 (ER), 2013 WL 440556, at *4 (S.D.N.Y. Feb. 5, 2013) (quoting DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998));

see also Jones, 691 F.3d at 81 ("[I]solated acts of excessive force by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability."). Any holding to the contrary would approach the responsdeat superior theory that Monell explicitly rejects. Monell, 436 at 691; see also Jeffes v. Barnes, 208 F.3d 49, 61 (2d Cir. 2000) (noting that, "[b]ecause respondeat superior liability is not permissible" under section 1983, "the courts must apply rigorous standards of culpability and causation to ensure that the indirect-causation theory not result in the municipality's being held liable solely for the actions of its employee" (internal quotation marks and alteration omitted)). Accordingly, we conclude that plaintiff's Monell claim fails as a matter of law.[10]

---

[10]    Because we have granted NYCHA's motion for summary judgment as to the Monell claim, NYCHA urges us to dismiss the remaining state law claims pursuant to 28 U.S.C. 1367(c)(3) ("section 1367(c)(3)"). However, plaintiff has also asserted a federal claim against Valentin. See Compl. ¶¶ 43-44. In this circumstance, section 1367(c)(3) has no applicability. See, e.g., 16 J. Moore et al., Moore's Federal Practice § 106.66[1], p. 106-94 (3d Ed. 2013) (stating that a court may only invoke section 1367(c)(3) when it has dismissed "all claims" over which it maintains original jurisdiction, "not just those claims asserted against a particular defendant").
    Moreover, the fact that Valentin has yet to appear in this action does not alter our conclusion. Even if a default judgment were entered against Valentin, such judgment would not constitute a "dismissal" of the federal claim that plaintiff asserts against him. See, e.g., Morin v. Empiyah & Co., LLC, 389 F. Supp. 2d 506, 511 (S.D.N.Y. 2005). Accordingly, we retain jurisdiction over plaintiff's state law claims, which we now address for their sufficiency.

**B.    NYCHA   Cannot   Be   Held   Liable   for   the   Alleged Misconduct   Under   a   State   Law   Theory   of   Respondeat Superior**

Under New York law, an employer is vicariously liable for the torts of its employee only where the tortious act was foreseeable and committed within the scope of the tortfeasor's employment.   Doe v. Guthrie Clinic, Ltd., 710 F.3d 492, 495 (2d Cir. 2013) (citing Horvath v. L & B Gardens, Inc., 932 N.Y.S.2d 184, 185 (N.Y. App. Div. 2011)).   "An employee's actions fall within the scope of employment where the purpose in performing such actions is to further the employer's interest, or to carry out duties incumbent upon the employee in furthering the employer's business."   Pinto v. Tenenbaum, 963 N.Y.S.2d 699, 701 (N.Y. App. Div. 2013) (internal quotation marks omitted). In contrast, actions taken for purely "personal motives" cannot give rise to respondeat superior liability.   Swarna v. Al-Awadi, 622 F.3d 123, 144 (2d Cir. 2010) (internal quotation marks omitted); accord Pinto, 963 N.Y.S.2d at 701.   The question of whether a particular action falls within the scope of employment is typically reserved for the jury.   Romero v. City of New York, 839 F. Supp. 2d 588, 629 (E.D.N.Y. 2012) (citing Girden v. Sandals Int'l, 262 F.3d 195, 205 (2d Cir. 2001)).   In certain instances, however, a court may resolve this issue as a matter of law.   Id. (citing Girden, 262 F.3d at 205).

Such is the case here.  As plaintiff concedes, "New York courts have consistently held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context."  Pl.'s Supp. Br. 8.[11]  Here, it is undisputed that NYCHA prohibited the alleged sexual assault, <u>see</u> Filiberti Decl. Ex. S, at 9, and took formal disciplinary action after its occurrence, <u>see</u> <u>id.</u> Ex. A.   Under these circumstances, a rational jury could not conclude that Valentin was doing his "master's work" when he caused the alleged harm.[12]  <u>See, e.g.</u>, <u>Doe v. City of New York</u>, No. 09 Civ. 9895 (SAS), 2013 WL 796014, at *5 & n.64 (S.D.N.Y. Mar. 4, 2013) (finding that police officers were not acting within the scope of their employment when they committed rape and sexual assault,

---

[11]   <u>See also</u> <u>Swarna</u>, 622 F.3d at 144-45 (collecting cases); <u>N.X. v. Cabrini Med. Ctr.</u>, 765 N.E.2d 844, 847 (N.Y. 2002) (holding that sexual assault "is a clear departure from the scope of employment, having been committed for wholly personal motives").

[12]   Plaintiff maintains that additional discovery is needed to determine whether the "purpose" of the alleged sexual assault was somehow "intertwined" with Valentin's employment.  Pl.'s Supp. Br. 4.  In support of this contention, plaintiff cites -- but does not identify -- recent "scientific research" purportedly establishing that sexual assault is motivated not by "the assailant's personal and sexual" desires, but rather by his "need to demonstrate his position of power and authority over a more vulnerable female."  <u>Id.</u> 7.  Plaintiff contends that expert discovery would demonstrate that Valentin sexually assaulted Carballo to assert his power over her "as an exterminator with access to her apartment."  <u>Id.</u> 4.
   The speculative nature of this argument aside, we find that plaintiff's theory is entirely self-defeating.  Even assuming, <u>arguendo</u>, that Valentin sexually assaulted Carballal "to exhibit his position of power and authority," <u>id.</u> 10, plaintiff does not explain, let alone substantiate, how this purported purpose advanced NYCHA's interests.  To the contrary, it would seem all the more clear that Valentin committed the alleged sexual assault for wholly personal and narcissistic ends.

resulting in a conviction of official misconduct). To the contrary, it is clear that Valentin was acting on "wholly personal" motives, thus rendering plaintiff's respondeat superior claim untenable as a matter of law. N.X., 765 N.E.2d at 847; see also Osvaldo D. v. Rector Church Wardens & Vestrymen of the Parish of Trinity Church, 834 N.Y.S.2d 94, 94 (N.Y. App. Div. 2007) (upholding summary judgment in favor of a church whose employee committed an alleged sexual assault); Woods v. CVS, No. 13 Civ. 611 (GBD), 2013 WL 1736587, at *3 (S.D.N.Y. Apr. 19, 2013) (granting summary judgment in favor of a pharmacy whose employee allegedly sexually assaulted the plaintiff).

### C. NYCHA Cannot Be Held Liable for the Negligent Hiring, Retention, Training, or Supervision of Valentin

To impose liability on an employer for negligent hiring, retention, training, or supervision, a plaintiff must show, inter alia, "that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence." Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir. 2004) (internal quotation marks omitted); see also Brandy B. v. Eden Cent. Sch. Dist., 934 N.E.2d 304, 307 (N.Y. 2010) (stating that a claim for negligent supervision cannot succeed "without evidence of any prior conduct similar to the unanticipated injury-causing act"). As

explained supra, plaintiff has not offered any evidence demonstrating that NYCHA had actual or constructive knowledge of any propensity on Valentin's part to commit an act of sexual aggression. See supra Section II(A). Accordingly, plaintiff has failed to raise a triable issue of fact as to whether NYCHA knew, or should have known, that Valentin was "unfit" to exterminate apartments on account of his alleged proclivity for sexual assault. Papelino v. Albany Coll. of Pharmacy of Union Univ., 633 F.3d 81, 94 (2d Cir. 2011). Plaintiff's claim of negligent hiring, retention, training, and/or supervision therefore fails as a matter of law. See, e.g., Tsesarskaya v. City of New York, 843 F. Supp. 2d 446, 464 (S.D.N.Y. 2012) (collecting cases).

## CONCLUSION

For the foregoing reasons, NYCHA's motion for summary judgment (docket no. 11) is granted.

Dated:   New York, New York
         July 9, 2013

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

23

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

**Attorneys for Plaintiff**

Stuart E. Jacobs, Esq.
David M. Hazan, Esq.
Jacobs & Hazan, LLP
11 Park Place, 10th Floor
New York, NY 10007

**Attorney for Defendant NYCHA**

Joanne Filiberti, Esq.
Leahey & Johnson, P.C.
120 Wall Street, Suite 2220
New York, NY 10005